IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 18, 2007

## STATE OF TENNESSEE v. JULIUS CAMERON HILL

**Appeal from the Circuit Court for Bedford County**
**No. 15952    Robert G. Crigler, Judge**

---

**No. M2007-00133-CCA-R3-CD  - Filed June 25, 2008**

---

Following a July 2006 jury trial, the defendant, Julius Hill, was convicted of one count of possession of 0.5 gram or more of cocaine with intent to sell, a Class B felony, one count of possession of 0.5 gram or more of cocaine with intent to deliver, a Class B felony, and two counts of simple possession of a controlled substance, a Class A misdemeanor.  The trial court merged the two felony convictions and sentenced the defendant as a Range I, standard offender, to twelve years in the Department of Correction on the felony conviction and eleven months, twenty-nine days on each misdemeanor conviction, with all sentences to be served concurrently.  On appeal, the defendant contends that the evidence produced at trial was insufficient to convict him of the felony counts and that the trial court imposed an excessive sentence.  After reviewing the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**.

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ALAN E. GLENN, JJ., joined.

Donna Orr Hargrove, District Public Defender; Michael J. Collins, Assistant District Public Defender, for the appellant, Julius Cameron Hill.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; W. Michael McCown, District Attorney General; Michael D. Randles and Ann L. Filer, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

At trial, Tim Miller, Assistant Director of the Seventeenth Judicial District Drug Task Force, testified that prior to December 8, 2004, he and other task force members had placed the defendant under observation as part of their duties.  As part of the investigation, Miller had learned that the defendant's driver's license was suspended.  On December 8, Miller learned from Tim Lane, the task force director, that the defendant's vehicle was located at a gas station located in Shelbyville.  Miller then proceeded to the gas station, where he observed the defendant leaving the parking lot in his

vehicle, a black two-door Toyota. Miller then turned around and followed the defendant in his unmarked police vehicle, with Lane following the two cars. Miller activated his lights and sirens, but the defendant refused to pull over. Miller testified that as the defendant kept driving, Miller observed the defendant "bent over at the waist . . . reaching under the seat or over in the seat." Miller testified that after a while, the defendant made an abrupt turn into a Save-a-Lot store parking lot. As the defendant entered the parking lot, Miller observed the defendant throw a green substance out the window two or three times. The defendant then lost control of his vehicle in the parking lot, nearly hitting a truck, before stopping. Miller apprehended the defendant as he was exiting his vehicle.

After handcuffing the defendant, Miller turned over the defendant to Lane, who had followed Miller and the defendant into the parking lot. Miller then collected the green substance which the defendant had thrown out of the vehicle. At that point, Miller determined that the substance was marijuana. Miller then returned to the area near the defendant's vehicle, where Lane had removed several items from the defendant's car. Among the items were a set of digital scales and a plastic bag containing what the two officers believed to be cocaine. Miller testified that he opened the scales and determined that there was a white powder residue on the outer portion of the scales, as well as on the center of the scales. Miller also noted that the defendant had $1195 on his person at the time of his arrest.

Miller testified that at some point after the defendant's arrest, he was present when Lane advised the defendant of his Miranda rights. According to Miller, the defendant waived those rights and agreed to cooperate with police. After the interview, the defendant granted the police permission to search his residence. Miller testified that he, the defendant, and Lane then proceeded to the defendant's residence. Upon entering the defendant's bedroom, Miller collected a cellophane wrapper containing a single pill. Miller testified that based on his experience, he believed the pill was an ecstasy tablet. The police also collected a pill bottle containing fifteen Darvocet tablets, another bottle containing nine Lortab pills, as well as some marijuana and "some other pills that weren't scheduled by the DEA." Miller also testified that he and Lane observed a camera system outside the residence. According to Miller, the cameras transmitted images to a big-screen television and could be used to "monitor anybody coming up to the front door." According to Miller, after he collected the evidence from the defendant's residence, he gave it, along with the evidence retrieved at the time of the defendant's arrest, to Lane, who in turn brought the evidence to the Tennessee Bureau of Investigation (TBI) crime lab for additional testing.

On cross-examination, Miller said that the amount of cocaine seized from the defendant was 0.6 gram, which was "about half of an Equal packet or sugar packet that you would find at a restaurant." However, Miller noted that the defendant was charged with possession with intent to sell or deliver based on the fact that the defendant, at the time of his arrest, was in possession of digital scales and a large sum of cash. Miller also noted that the decision to charge the defendant with felony possession for the cocaine and misdemeanor possession for the pills retrieved from his residence was based on the defendant's statement to police, in which he did not admit to using cocaine, and on his admission that the pills found at his residence were for his personal use.

Tim Lane, the Director of the Seventeenth Judicial District Drug Task Force, testified that on December 8, 2004, he and Miller were conducting surveillance on the defendant's residence and along South Cannon Boulevard in Shelbyville. Lane observed the defendant inside his vehicle in a gas station parking lot, at which point he contacted Miller. According to Lane, Miller then chased the defendant's vehicle through the streets of Shelbyville before the defendant's vehicle came to rest in a Save-a-Lot parking lot. Lane followed the two vehicles to the store; when he arrived at the parking lot, Miller had already arrested the defendant. Miller turned the defendant over to Lane while Miller searched the parking lot. Lane then searched the defendant, finding $1195 on his person. Lane also searched the defendant's vehicle, locating a set of digital scales, a bag of what appeared to be cocaine, and a small amount of marijuana. Lane noted that the scales contained what appeared to be cocaine residue on them. He said that the scales were of the type "that a person [who] is involved in the distribution of illegal narcotics would be in possession of," and that "[u]sers and addicts don't carry scales like this."

At some point after the defendant was arrested, Lane advised the defendant of his Miranda rights. After the defendant waived his rights, he spoke with the officers inside Lane's police car. According to Lane, the defendant admitted selling crack cocaine. The defendant told the officers that he had been going to Nashville on a weekly basis and purchasing an ounce of cocaine, which he would bring back to Bedford County and sell out of his trailer. The defendant admitted to owning the cocaine and scales found in his vehicle and admitted that much of the money Lane had seized had been acquired by the defendant during his drug sales. Lane asked the defendant permission to search his trailer, explaining to the defendant that he had the right to refuse consent. The defendant allowed the police to search his trailer, at which point the defendant and the two officers proceeded to the defendant's residence. Lane then offered testimony regarding the camera system and pills which were located at the defendant's residence. According to Lane, the defendant admitted that some persons who bought cocaine from him had bartered the pills for cocaine.

On cross-examination, Lane testified that the cocaine retrieved from the defendant's vehicle was found in a "pretty big plastic bag." According to Lane, the fact that a relatively small amount of cocaine was found in a large sandwich bag was indicative of the fact that "there was probably more cocaine in that bag at some point . . . a person wouldn't carry a very small amount of cocaine or 6 tenths of a gram of cocaine in a very big plastic bag unless there was a much larger amount of cocaine in there previously." Lane noted that small amounts of cocaine for personal use or individual sales were usually found in a "very small what they call jewelry-type plastic bag . . . and it would contain like a little earring or something like that normally." Lane noted that while the defendant did not state that he used cocaine, Lane did not specifically ask the defendant whether he used cocaine.

TBI agent John Scott testified that he tested the evidence recovered from the defendant's residence and vehicle. He testified that the white substance retrieved from the defendant's vehicle was cocaine weighing 0.6 gram. He also testified that the leafy green substance retrieved from the vehicle and the store parking lot was marijuana weighing 16.5 grams. Regarding the pills recovered

from the defendant's residence, Agent Scott testified that one tablet was MDMA or ecstasy, a Schedule I controlled substance. He also noted that fifteen of the pills were propoxyphene, a Schedule IV controlled substance, and nine of the pills were dihydrocodeinone, commonly known as Lortab, a Schedule III controlled substance.

The defendant did not present any witnesses on his behalf.

After hearing the above proof, the jury convicted the defendant on one count of possession of cocaine with intent to sell, one count of possession of cocaine with intent to deliver, and two counts of misdemeanor possession of a controlled substance. The trial court merged the two felony cocaine possession counts and sentenced the defendant to twelve years in the Department of Correction. The court sentenced the defendant to eleven months, twenty-nine days on the two misdemeanor possession counts and ordered these sentences to be served concurrently to the sentence imposed for the felony conviction. The trial court ordered the sentence in this case to be served consecutively to a four-year sentence which the defendant was serving for unrelated offenses at the time of this sentencing hearing.[1] This appeal follows.

## ANALYSIS

### *Sufficiency of Evidence*

The defendant initially asserts that the evidence produced at trial was insufficient for the jury to convict him of either possession of cocaine with intent to sell or possession of cocaine with intent to deliver. The state contends that the evidence supports the jury's guilty verdicts. We agree with the state.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979) (emphasis in original). The appellate court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, and on appeal the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict. Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

---

[1]The defendant does not challenge the propriety of the imposition of consecutive sentences on appeal.

-4-

The defendant was convicted of possession of a Schedule II drug with the intent to sell and possession of a Schedule II drug with the intent to deliver. As applicable to the present case, "[i]t is an offense for a defendant to knowingly . . . "[p]ossess a controlled substance with intent to . . . deliver or sell the controlled substance." Tenn. Code Ann. § 39-17-417(a)(4) (2003). Cocaine is a Schedule II controlled substance. See id. § 39-17-408(b)(4). According to our criminal code, "[i]t may be inferred from the amount of controlled substance or substances possessed by an offender, along with other relevant facts surrounding arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." See id. § 39-17-419 (emphasis added). Possession of 0.5 gram or more of cocaine with intent to sell or deliver is a Class B felony. Id. § 39-17-417(c)(1).

In this case, the defendant argues that because he was arrested with a small amount of cocaine (0.6 gram, slightly above the 0.5 gram threshold), and because he was convicted of simple possession regarding the pills found in his residence, the evidence produced at trial supported his theory that the cocaine was for his personal use and therefore did not support his convictions for possession with intent to sell or deliver. However, the evidence produced at trial also indicated that at the time the defendant was arrested, he possessed a digital scale, which the arresting officers testified was commonly used by drug dealers to weigh cocaine and which contained cocaine residue. The officers also testified that the defendant had over $1000 on his person at the time of his arrest, and that the cocaine was contained in a bag that was significantly larger than one necessary to contain the amount of cocaine with which the defendant was found, a fact which Lane testified was indicative of a larger amount of cocaine originally having been in the bag. The defendant also admitted to police that he bought and sold cocaine, but he did not tell police that he used cocaine. Finally, when the police searched the defendant's residence, they found a video camera and television system used to track visitors to the residence, as well as pills which the defendant admitted were payment for cocaine. In light of these facts, viewed in a light most favorable to the state, the jury could conclude beyond a reasonable doubt that the defendant was guilty of the indicted offenses of possession of cocaine with intent to sell and possession with intent to deliver. Thus, the defendant is not entitled to relief on this issue.

*Excessive Sentence*

The defendant next argues that his twelve-year sentence in this case is excessive and contrary to law. Initially, we note that the defendant's offenses were committed in December 2004. Accordingly, although the defendant was not indicted until November 2005, after the July 2005 enactment of Tennessee's revised sentencing act, the defendant would have been sentenced according to the sentencing guidelines effective at the time of his arrest unless he executed a waiver of his ex post facto rights. See 2005 Tenn. Pub. Act ch. 353, § 18. No such waiver appears in the record, and at the sentencing hearing neither the judge nor the parties addressed the issue of which version of the sentencing act would be used. Therefore, we must apply the former sentencing act in our review of the defendant's sentence. For the reasons stated below, we conclude that the trial court erred in applying one enhancement factor to the defendant's sentence, but we also conclude that the error was harmless beyond a reasonable doubt, as the record still supports the maximum sentence

imposed by the trial court.

An appellate court's review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d) (2003). As the Sentencing Commission Comments to this section note, on appeal the burden is on the defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, the court may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> [T]he trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. Tenn. Code Ann. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994).

In conducting its de novo review, the appellate court must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210 (2006); see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

At the sentencing hearing, the trial court noted the existence of the following enhancement factors:

> (2) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; and
> (9) The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community.

Tenn. Code Ann. § 40-35-114(2), (9) (2003). The defendant did not submit any mitigating factors for the trial court's consideration, and the court did not apply any. The trial court sentenced the defendant to twelve years in the Department of Correction, the maximum sentence permitted under

our criminal code for a defendant convicted of a Class B felony as a Range I, standard offender. <u>See</u> Tenn. Code Ann. § 40-35-112(a)(2) (2003).

Under the law as it existed before the 2005 amendment, unless enhancement factors were present, the presumptive sentence to be imposed was the minimum in the range for a Class B felony. Tenn. Code Ann. § 40-35-210(c) (2003). Tennessee's pre-2005 sentencing act provided that, procedurally, the trial court was to increase the sentence within the range based on the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors. <u>Id</u>. at (d), (e). However, the Tennessee Supreme Court recently held that the trial court's enhancement of a defendant's sentence based on factors that had not been found by a jury beyond a reasonable doubt violated a defendant's Sixth Amendment right to a jury trial as interpreted by the Supreme Court. <u>State v. Gomez</u>, 239 S.W.3d 733, 740-41 (Tenn. 2007) ("<u>Gomez II</u>") (citing <u>Cunningham v. California</u>, 549 U.S. 270, 127 S. Ct. 856, 860 (2007)); <u>See also</u> <u>Blakely v. Washington</u>, 542 U.S. 296, 301; 124 S. Ct. 2531, 2536 (2004) (quoting <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63 (2000)) ("'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'"). Thus, the trial court's application of enhancement factor (9) to the defendant's sentence was improper.

However, our conclusion that the trial court erred in applying one of the two enhancement factors to the defendant's sentence does not mandate a reduction in the defendant's sentence. The United States Supreme Court has "repeatedly recognized" that "'most constitutional errors can be harmless.'" <u>Washington v. Recuenco</u>, 548 U.S. 212, 126 S. Ct. 2546, 2551 (2006) (citing <u>Neder v. United States</u>, 527 U.S. 1, 8, 119 S. Ct. 1827 (1999) and quoting <u>Arizona v. Fulminante</u>, 499 U.S. 279, 306, 111 S. Ct. 1246 (1991)). As relevant to this case, the Supreme Court has held that "failure to submit a sentencing factor to the jury" is a non-structural constitutional error. <u>Recuenco</u>, 126 S. Ct. at 2553. While a non-structural constitutional error may be harmless, such an error "requires reversal unless the State demonstrates beyond a reasonable doubt that the error is harmless." <u>State v. Edwardo Rodriguez</u>, ___ S.W.3d ___, No. M2005-02466-SC-R11-CD, 2008 WL 1817361, at *8 (Tenn. Apr. 24, 2007). In other words, non-structural constitutional errors may only be considered harmless "[when] it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" <u>State v. Allen</u>, 69 S.W.3d 181, 190 (Tenn. 2002) (quoting <u>Neder</u>, 527 U.S. at 15).

Regarding the application of enhancement factors to a defendant's sentence, this court has noted that "[t]he mere number of existing enhancement factors is not relevant—the important consideration [is] the weight to be given each factor in light of its relevance to the defendant's personal circumstances and background and the circumstances surrounding his criminal conduct." <u>State v. Hayes</u>, 899 S.W.2d 175, 186 (Tenn. Crim. App. 1995) (citing <u>Moss</u>, 727 S.W.2d at 238). In this case, at the sentencing hearing the state presented evidence of the defendant's criminal record, which consisted of at least twelve convictions, including a felony conviction for a possession of contraband in a penal facility, a felony conviction for automobile burglary (under the theory of criminal responsibility), misdemeanor convictions for offenses including assault, possession of

marijuana, and resisting arrest, and numerous traffic offenses. In imposing an enhanced sentence, the trial court noted that it placed "enormous weight" on the previous convictions enhancement factor. The defendant's extensive criminal record, coupled with the absence of mitigating factors, leads us to conclude that state proved beyond a reasonable doubt that the trial court's error in applying enhancement factor (9) to the defendant's sentence did not contribute to the sentence imposed by the trial court and was therefore harmless beyond a reasonable doubt. Thus, the defendant is not entitled to relief on this issue.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE